IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**HENRY ARMSTRONG, CHELI ARMSTRONG,**            **PLAINTIFFS**
**CORDELL COLEMAN and EDWIN SIMON, Each Individually**
**and on Behalf of All Others Similarly Situated**

vs.                            4:17-cv-1521

**TEJAS COURIER, LLC, and MARK VARGAS**           **DEFENDANTS**

## ORIGINAL COMPLAINT—COLLECTIVE ACTION

COME NOW Plaintiffs Henry Armstrong, Cheli Armstrong, Cordell Coleman and Edwin Simon ("Plaintiffs"), each individually and on behalf of others similarly situated, by and through their attorney Josh Sanford of Sanford Law Firm, PLLC, and for their Original Complaint–Collective Action ("Complaint") against Defendants Tejas Courier, LLC, and Mark Vargas (collectively "Defendants"), and in support thereof they do hereby state and allege as follows:

### I. PRELIMINARY STATEMENTS

1. Plaintiffs, each individually and on behalf of all others similarly situated, bring this action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), for declaratory judgment, monetary damages, liquidated damages, prejudgment interest, civil penalties and costs, including reasonable attorney's fees, as a result of Defendant's commonly applied policy and practice of failing to pay Plaintiffs and all others similarly situated minimum and overtime wages as required by the FLSA.

## II. JURISDICTION AND VENUE

2. The United States District Court for the Southern District of Texas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the FLSA.

3. Defendant conducts business within the State of Texas, providing courier/delivery services within the State of Texas.

4. Venue lies properly within this Court under 28 U.S.C. § 1391(b)(1) and (c)(2), because the State of Texas has personal jurisdiction over Defendant, and Defendant therefore "resides" in Texas.

5. A substantial part of the acts complained of herein were committed and had their principal effect against Plaintiffs within the Houston Division of the Southern District of Texas; therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## III. THE PARTIES

6. Plaintiff Henry Armstrong is an individual and resident and domiciliary of the State of Texas.

7. Plaintiff Cheli Armstrong is an individual and resident and domiciliary of the State of Texas.

8. Plaintiff Cordell Coleman is an individual and resident and domiciliary of the State of Texas.

9. Plaintiff Edwin Simon is an individual and resident and domiciliary of the State of Texas.

10. At all times material herein, each Plaintiff has been entitled to the rights, protection and benefits provided under the Fair Labor Standards Act 29 U.S.C. § 201, *et seq*.

11. Defendant Tejas Courier, LLC ("Tejas"), is a for-profit, domestic limited liability company created and existing under and by virtue of the laws of the State of Texas and registered to do business in the State of Texas, providing on-demand and scheduled courier services.

12. Defendant Tejas operates numerous branch offices that offer same-day on-demand and scheduled delivery throughout the State of Texas.

13. Defendant Tejas's primary business purpose is to provide courier/delivery services, and Tejas employs couriers/delivery drivers to accomplish this goal.

14. Courier/delivery services are at least one integral part of Tejas's business.

15. Defendant Tejas's annual gross volume of sales made or business done was not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) during each of the three calendar years preceding the filing of this Complaint.

16. During each of the three years preceding the filing of this Complaint, Tejas has at least two employees that handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce, including, but not limited to, medical supplies and bio-materials, catering supplies, or manufactured goods for the benefit of Defendant.

17. Defendant Tejas has designated Courtney Griffin at 4707 Eigel, Houston, Texas 77007, to accept service on its behalf.

18. Defendant Mark Vargas ("Vargas") is a principal, director and/or officer of Tejas.

19. Upon information and belief, Defendant Vargas controls or has the right to control the day-to-day operations of Defendant Tejas such that he is liable to Plaintiffs as an employer under the FLSA.

20. Defendant Tejas established and/or maintained the policies at issue in this case.

21. Defendant Tejas was at all times relevant hereto Plaintiffs' employer and is and has been engaged in interstate commerce as that term is defined under the FLSA.

## IV. FACTUAL ALLEGATIONS

45. Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as though fully incorporated in this section.

46. Defendants' primary business purpose is to provide delivery services, and Defendants employ courier drivers to accomplish this goal.

47. Within three years prior to the filing of this Complaint, Defendants hired Plaintiffs, among other individuals, to perform duties as a courier driver.

48. Defendants were the employer for purposes of the FLSA of the couriers, including Plaintiffs and the Putative Class Members, throughout the relevant time period in this case.

49. During the time period relevant to this lawsuit, Plaintiffs were first treated as "independent contractors" and then later as "daily rate" employees for purposes of the FLSA.

50. To perform their jobs for Defendants, each and every courier must be trained or oriented to their duties, Defendants' paperwork, processes and methods, customer requirements, and anything else they need to know to perform the work for Defendants.

51. Defendants exercised comprehensive control over the employment of its couriers, including Plaintiffs' employment.

52. Defendants required couriers to follow a fixed schedule in performing their routes/deliveries.

53. Couriers could not refuse pick-ups or deliveries on their assigned route.

54. Defendants ordered couriers to make additional stops on their routes. Couriers could not refuse to make these additional deliveries/pick-ups.

55. All couriers were expected to follow Defendants' dress code and guidelines.

56. Defendants expected each and every courier to wear a photo identification badge.

57. All couriers were hired to work for Defendants for an indefinite period of time.

58. Defendant leased warehouses in which couriers picked-up parcels for delivery.

59. No couriers shared in Defendants' profits.

60. No couriers shared in Defendants' losses.

61. Defendants set the pay rate for couriers. Defendants compensated couriers, including Plaintiffs, for their work on a daily flat-rate basis.

62. Couriers were not involved in getting new customers for Defendants.

63. Defendants entered into contracts with their customers, and no courier signed contracts with Defendants' customers.

64. Couriers did not submit competitive pricing bids for routes or deliveries.

65. Defendants determined the couriers' pay scale for certain types of packages or delivery routes without input from or negotiation with couriers.

66. Defendants set prices to its customers for certain types of packages or delivery routes without courier input or negotiation.

67. Defendants determined where to locate Defendants' branches and offices without courier input.

68. Defendants made decisions on advertising Defendants' business without courier input.

69. Couriers did not advertise themselves.

70. Defendants made decisions on what new business to pursue or take without courier input.

71. Couriers did not negotiate contracts or prices with Defendants' customers.

72. All couriers had at least one manager or other superior individual who was in charge of them and the other couriers at the branch, who made hiring and firing decisions, who arranged for training or orientation of new couriers, and who communicated corporate policies, decisions, or directives.

73. Defendants required couriers to follow the directions of Defendants' field managers with respect to performing work.

74. Defendants' field managers had authority to fire couriers for insubordination or failure to adhere to any other of Defendants' policies or procedures.

75. All couriers were expected to follow Defendants' directives on whether to put a sign on the side of their vehicles or otherwise display logos in or on their vehicles.

76. Defendants required all couriers to follow Defendants' policies regarding how to track deliveries.

77. Defendants required all couriers to obtain and maintain a certain level of insurance.

78. Couriers drove their own vehicles while performing courier/delivery services on Defendants' behalf.

79. During the relevant time, each Plaintiff performed courier/delivery services and incidental duties on Defendants' behalf.

80. Defendants generally did not pay any couriers any overtime premium for hours that they worked over forty hours per week.

81. In other words, if any courier worked more than forty hours per week, Defendants' policy was not to pay that courier an overtime premium of one and one half times the couriers' regular rate for the hours over forty.

82. After deducting for expenses related to the operation of Plaintiffs' vehicles in the course of performing job duties for Defendants, Plaintiffs' pay regularly fell below the minimum wages required by the FLSA.

83. Even after reclassifying Plaintiffs from "independent contractors" to employees, Defendants continued the same practice of paying its couriers on a daily-rate basis.

84. As employees, Plaintiffs continued to work in excess of forty hours per week, and Defendants continued to not pay Plaintiffs an overtime premium of one and one half times the Plaintiffs regular rate for the hours over forty.

85. Defendants knew or should have known that the job duties of Plaintiffs required Plaintiffs to work hours in excess of forty per week, yet Defendants failed and refused to compensate Plaintiffs for their work as required by the FLSA.

86. At all times relevant hereto, Defendants were aware of the minimum wage and overtime requirements of the FLSA.

## V. REPRESENTATIVE ACTION ALLEGATIONS

87. Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as though fully incorporated in this section.

88. Plaintiffs bring their claims for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons who were, are or will be employed by Defendants as similarly situated employees at any time within the applicable statute of limitations period, who are entitled to payment of the following types of damages:

   i. Minimum wages for the first forty (40) hours worked each week;

   ii. Overtime premiums for all hours worked for Defendants in excess of forty (40) hours in any week;

   iii. Reimbursement for vehicle-related expenses sufficient to bring compensation to minimum wages and overtime premiums;

   iv. Liquidated damages; and

   v. Costs of this action, including attorney's fees.

89. Plaintiffs are unable to state the exact number of the class but believe that the class membership exceeds 50 persons but is less than 250 persons. Defendants can readily identify the members of the classes, who are a certain portion of the current and former employees of Defendants.

90. The names and physical and mailing addresses of the probable FLSA collective action Plaintiffs are available from Defendants, and notice should be provided to the probable FLSA collective action Plaintiffs via first class mail to their last known physical and mailing addresses as soon as possible.

91. The email addresses of many of the probable FLSA collective action Plaintiffs are available from Defendants, and notice should be provided to the probable FLSA collective action Plaintiffs via email to their last known email address as soon as possible.

92. The phone numbers of many of the probable FLSA collective action Plaintiffs are available from Defendants, and notice should be provided to the probable FLSA collective action Plaintiffs via text message to their last known phone number as soon as possible.

93. Courier workers are by definition not at their residences as frequently as many other working-class Americans. As such, they rely on email and text message just as much or more so than typical wage earners, who themselves live their lives with a growing dependence upon email and text message as opposed to traditional U.S. Mail.

94. The proposed classes of opt-in Plaintiffs in this case are preliminarily defined as follows:

**Class A.**

Each individual who performed courier/delivery services as an employee on Defendants' behalf any time during the three years preceding the filing of the Original Complaint.

**Class B.**

Each individual who performed courier/delivery services as an independent contractor on Defendants' behalf any time during the three years preceding the filing of the Original Complaint.

95. The proposed FLSA class members are similarly situated in that they share these traits:

   i. They performed the same or similar job duties;

   ii. They were subject to Defendants' common policy of failing to properly pay overtime-rate wages for all hours worked in excess of forty (40) hours per week;

   iii. They were subject to numerous other common policies and practices as described *supra*.

### VI. FIRST CAUSE OF ACTION
### (Individual Claims for FLSA Overtime Violations)

96. Plaintiffs repeat and re-allege all the preceding paragraphs of this Complaint as if fully set forth in this section.

97. 29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay all employees a minimum wage for all hours worked up to forty (40) in one week and to pay one and one-half times regular wages for all hours worked over forty (40) hours in a week, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying Department of Labor regulations.

98. The costs that Plaintiffs incurred, including, but not limited to, use of their own vehicles, for the benefit of Defendants, caused Plaintiffs' free and clear pay to fall below minimum wages.

99. Defendants also unlawfully refrained from paying Plaintiffs an overtime premium for hours over forty per week.

100. Defendants' failure to pay each Plaintiff all minimum and overtime wages owed and to reimburse Plaintiff's work-related vehicle expenses was willful.

95. By reason of the unlawful acts alleged herein, Defendants are liable to each Plaintiff for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three (3) years prior to the filing of this Complaint.

## VII. SECOND CAUSE OF ACTION
**(Collective Action Claim for Violations of the FLSA)**

96. Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as though fully incorporated in this section.

97. Plaintiffs, on behalf of all others similarly situated, assert this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

98. The costs that Drivers incurred, including, but not limited to, use of their own vehicles, for the benefit of Defendants, caused Drivers' free and clear pay to fall below minimum wages.

99. Defendants also unlawfully refrained from paying Drivers an overtime premium for hours over forty per week.

100. Defendants' failure to pay Drivers all minimum and overtime wages owed and to reimburse Drivers' work-related vehicle expenses was willful.

101. By reason of the unlawful acts alleged herein, Defendants are liable to members of the Section 216 class for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three (3) years prior to the filing of this Complaint.

## VIII. PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiffs Henry Armstrong, Cheli Armstrong, Cordell Coleman and Edwin Simon, each individually and on behalf of others similarly situated, respectfully prays for declaratory relief and damages as follows:

A. That Defendants be summoned to appear and answer herein;

B. That Defendants be required to account to Plaintiffs, the class members, and the Court for all of the hours worked by Plaintiffs and the class members and all monies paid to them;

C. A declaratory judgment that Defendants' practices alleged herein violate the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*, and attendant regulations at 29 C.F.R. § 516 *et seq.*;

D. Certification of, and proper notice to, together with an opportunity to participate in the litigation, all qualifying members of the collective action class;

E. Judgment for damages for all unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and attendant regulations at 29 C.F.R. § 516 *et seq.*;

F. Judgment for liquidated damages pursuant to the Fair Labor Standards Act, 29 US.C. §201, *et seq.*, and attendant regulations at 29 C.F.R. § 516 *et seq.*, in an

amount equal to all unpaid overtime compensation owed to Plaintiff and Putative Class Members during the applicable statutory period;

    G.    An order directing Defendant to pay Plaintiffs and members of the Class prejudgment interest, reasonable attorney's fees and all costs connected with this action; and

    H.    Such other and further relief as this Court may deem necessary, just and proper.

    Respectfully submitted,

    **HENRY ARMSTRONG, CHELI ARMSTRONG, CORDELL COLEMAN and EDWIN SIMON, Each Individually and on behalf of All Others Similarly Situated, PLAINTIFFS**

    SANFORD LAW FIRM, PLLC
    One Financial Center
    650 South Shackleford, Suite 411
    Little Rock, Arkansas 72211
    Telephone: (501) 221-0088
    Facsimile: (888) 787-2040

By:    */s/ Josh Sanford*
    Josh Sanford
    Tex. Bar No. 24077858
    josh@sanfordlawfirm.com